KLEINFELD, Circuit Judge:
This case requires us to construe the “reasonably equivalent value” standard in bankruptcy law for determining whether a conveyance is fraudulent. We deferred submission before the case was scheduled to be argued because the Supreme Court had granted certiorari in a case which would resolve the controlling issue. After the Supreme Court decision came down, BFP v. Resolution Trust Corporation, — U.S. -, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994), we obtained supplemental briefs from the parties on its effect, and now apply it to the case at bar. Because the Supreme Court rejected the doctrine applied by the bankruptcy court in its published decision at In re Lindsay, 98 B.R. 983 (Bankr.S.D.Cal.1989), we must reverse.
I. FACTS.
John Lindsay was the president of Lindsay Enterprises, Inc., which itself was the general partner in two limited partnerships, called IMA 79-6 and IMA 81-3. The limited partnerships borrowed $1.4 million from Beneficial Reinsurance Company to invest in an apartment complex in Texas called Greenway Plaza Apartments. The limited partnerships’ note to Beneficial was secured by a deed of trust.
The limited partnerships sold the real estate to Greenway Plaza Investment Company. Greenway’s note for $2.1 million was secured by a second deed of trust on the real estate, junior to Beneficial’s. The Texas real estate market declined, and Greenway defaulted on its note to the limited partnerships and filed for bankruptcy in Texas.
Beneficial successfully moved for relief from the automatic stay so that it could foreclose. Its lawyers negotiated with the limited partnerships’ lawyers about how they would proceed, because both had an interest in the property. Beneficial sent its notice of the foreclosure to the address it had in its records for the general partner and the limited partnership, but they had moved and did not receive the notice.
About seven months before the foreclosure, the debtors’ lawyer sent Beneficial’s *946 lawyer a letter asking for a copy of any order Beneficial and Greenway agreed upon to modify the automatic stay, and Beneficial’s lawyer agreed to send it to him when received. The order modifying the automatic stay in bankruptcy would enable Beneficial to foreclose. The bankruptcy court noted that debtors’ lawyers could have obtained notice from the bankruptcy court in Texas by filing a request there, but did not.
When Beneficial gave notice of foreclosure, it did not send notice to the debtors’ lawyers. Beneficial’s trustee was its lawyer, in the same firm as the lawyer who six months before had undertaken to send a copy of any agreed order vacating the stay. He did not cross copy the debtors’ lawyers on the notice of foreclosure. At the foreclosure sale, Beneficial bid the property in for $1.5 million, about $100,000 less than the balance due on its note plus additional chargeable items. At all relevant times since, Beneficial has operated the property, spending substantial amounts on refurbishing and collecting the rents itself as owner.
The limited partnerships, the general partner and Lindsay sued in bankruptcy court on numerous grounds, seeking to have the foreclosure sale to Beneficial set aside as a fraudulent conveyance, and other relief. Beneficial won summary judgment on all the claims except for fraudulent conveyance and improper notice of the sale. Those two claims went to trial. The bankruptcy court granted a declaratory judgment that the foreclosure sale “was regularly conducted under Texas law,” but granted a money judgment to the plaintiffs for about $836,000, the difference between fair market value of the real estate and the amount of Beneficial’s bid, on the ground that the conveyance was fraudulent.
On appeal, the district court affirmed the bankruptcy court’s judgment in favor of the limited partnerships on the fraudulent conveyance issue, but reversed the declaratory judgment in favor of Beneficial on compliance with Texas law, and remanded for consideration “as to whether Beneficial’s imputed knowledge of other IMAs’ address constituted knowledge of the plaintiff IMAs’ address, thereby rendering Beneficial’s notice of foreclosure sale insufficient under Texas law.” (emphasis in original). The district court also reversed the summary judgment on plaintiffs’ other claims on the ground that there were genuine issues of material fact.
Numerous other parties and issues have also been the subject of bankruptcy court and district court decisions in this group of cases, which are also on appeal. These other disputes will be set out in the analysis sections dealing with them.
II. ANALYSIS.
A. Fraudulent Conveyance.
Beneficial appeals, in No. 92-55268, the fraudulent conveyance judgment. The decision in BFP v. Resolution Trust Corporation, — U.S. -, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994), affirming our decision in BFP v. Imperial Sav. & Loan Ass’n (In re BFP), 974 F.2d 1144 (9th Cir.1992), requires us to reverse.
The Statute of 13 Elizabeth invalidated transfers “to delay, hinder or defraud creditors.” Among what came to be recognized as “badges of fraud” was “grossly inadequate consideration.” BFP, — U.S. at -, 114 S.Ct. at 1763. The bankruptcy law codifies fraudulent conveyance law by providing that the trustee may avoid a transfer -within a year prior to filing, if the debtor made the transfer “to hinder, delay, or defraud” creditors, or the debtor “received less than a reasonably equivalent value in exchange”:
(a) The trustee may avoid any transfer of an interest of the debtor in the property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
(1) made such transfer or incurred such obligation with the actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
*947 (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
(ii) was engaged in business or a transaction, or was about to engage in business or transaction, for which any property remaining with the debtor was unreasonably small capital; or
(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor’s ability to pay as such debts matured.
(2) In this section—
(A) “value” means property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unpermitted promise to furnish support to the debtor or to a relative of the debtor;
11 U.S.C. § 548, emphasis added. A foreclosure sale is treated as a transfer from the debtor to the foreclosing creditor for purposes of 11 U.S.C. § 548. 11 U.S.C. § 101(54).
The bankruptcy court made findings of fact after trial. Beneficial challenges them, but because of BFP, we need not reach the question of whether the findings favorable to the debtors were clearly erroneous. Assuming that the findings are correct, the conclusion must nevertheless be set aside.
The issue on which the bankruptcy court ruled against Beneficial was whether the foreclosure sale should be set aside because Beneficial bid in the real estate for “less than a reasonably equivalent value in exchange.” 11 U.S.C. § 548(a)(2)(A). The circuits were split on the question of what this provision meant. One said it meant reasonably equivalent to (at least 70% of) fair market value, Durrett v. Washington Nat. Ins. Co., 621 F.2d 201 (5th Cir.1980), one said that the price received at a noneollusive foreclosure sale regularly conducted under state law was rebuttably equivalent to fair market value, In re Bundles, 856 F.2d 815, 820 (7th Cir.1988), and two said the price so obtained was conclusively presumed to have returned “reasonably equivalent value.” In re BFP, 974 F.2d at 1149; In re Winshall Settlor’s Trust, 758 F.2d 1136, 1139 (6th Cir.1985). Our decision in In re BFP had not yet come down when the bankruptcy court ruled.
The bankruptcy court found, applying a variant of the Bundles approach, that Beneficial bid in the property for less than “reasonably equivalent value.” The reason was that its successful bid was only 64% of “fair market value” determined by appraisal, although the bid was 83% of what “bottom-fishers” offered shortly after the foreclosure sale. The district court affirmed, but on the Durrett theory. We review de novo, In re Frontier Properties, Inc., 979 F.2d 1358, 1362 (9th Cir.1992), and reverse, because of the subsequent Supreme Court decision resolving the intercircuit conflict.
The Supreme Court granted certiorari in In re BFP and affirmed our decision in that case. BFP v. Resolution Trust Corporation, — U.S. -, -, 114 S.Ct. 1757, 1767, 128 L.Ed.2d 556 (1994). Durrett and Bundles were both rejected. BFP involved a foreclosure sale in which the successful bid was $433,000 on a house with an alleged fair market value of $725,000, a 60% ratio which would have failed the Durrett test. The sale was found by the bankruptcy court to be in compliance with state law and neither collusive nor fraudulent. In order to assure security of real estate titles, and preserve the traditional role of state law in determining the adequacy of foreclosure sales, the Court adopted an irrebuttable presumption of “reasonably equivalent value” for foreclosure sales properly conducted under state law:
We deem, as the law has always deemed, that a fair and proper price, or a “reasonably equivalent value,” for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State’s foreclosure law have been complied with.
... Any irregularity in the conduct of the sale that would permit judicial invalidation of the sale under applicable state law deprives the sale price of its conclusive force under § 548(a)(2)(A), and the transfer may be avoided if the price received was not reasonably equivalent to the prop *948 erty’s actual value at the time of the sale (which we think would be the price that would have been received if the foreclosure sale had proceeded according to law).
Id. at -, 114 S.Ct. at 1765. In dictum, the Court suggested that collusive sales “are likely” subject to attack under the “actual intent” subsection, 11 U.S.C. § 548(a)(1).
Under BFP, Beneficial was entitled to judgment as a matter of law that the foreclosure sale was not a fraudulent conveyance, so long as “all the requirements of the State’s foreclosure law have been complied with.” BFP, — U.S. at -, 114 S.Ct. at 1757. It could be set aside only if there were “irregularity in the conduct of the sale that would permit judicial invalidation of the sale under applicable state law.” Id. Even if there were such an irregularity, that alone would not permit setting aside the foreclosure sale as a fraudulent conveyance. It would only destroy the irrebuttability of the presumption that the price was “reasonably equivalent value.” The transfer could then be avoided if the price received was not reasonably equivalent to “the price that would have been received if the foreclosure sale had proceeded according to law.” Id.
Failure of the foreclosure sale to return a price reasonably equivalent to fair market value is, under the Supreme Court decision in BFP, immaterial. The Appellees won the case below because the price was too small a percentage of fair market value, but that ground cannot stand. Their brief filed after BFP came down argues that inadequacy of price so great as to shock the conscience would still be a ground for setting aside the sale. Gross inadequacy of price is a ground for setting aside the foreclosure, under BFP, if state law so provides, but it is not a federal standard independent of state law enabling a bankruptcy court to set aside a foreclosure sale. Likewise, commercial reasonableness is a ground only if it is a state ground.
B. Choice of Law.
In order to decide whether the foreclosure complied with state law, see BFP at -, 114 S.Ct. at 1765, we must first decide whether California or Texas law should govern the foreclosure. The rule in diversity cases, that federal courts must apply the conflict of laws principles of the forum state, Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021-22, 85 L.Ed. 1477 (1941), does not apply to federal question cases such as bankruptcy. Compare In re Holiday Airlines Corp., 620 F.2d 731, 733-35 (9th Cir.1980); In re Cochise College Park, Inc., 703 F.2d 1339, 1348 n. 4 (9th Cir.1983); Chuidian v. Philippine Nat’l Bank, 976 F.2d 561, 564 (9th Cir.1992).
In federal question cases with exclusive jurisdiction in federal court, such as bankruptcy, the court should apply federal, not forum state, choice of law rules. Chuidian, 976 F.2d at 564; Holiday Airlines, 620 F.2d at 733-35; cf. Cochise College Park, 703 F.2d at 1348 n. 4; In re Merritt Dredging Co., 839 F.2d 203, 205 (4th Cir.1988); Woods-Tucker Leasing Corp. v. Hutchesofk-Ingram Development Co., 642 F.2d 744, 747-49 (5th Cir.1981); In re Koreag, Controle Et Revision S.A, 961 F.2d 341, 350-51 (2d Cir.1992); In re Monis, 30 F.3d 1578, 1581-82 (7th Cir.1994). In such cases, the risk of forum shopping which is avoided by applying state law has no application, because the case can only be litigated in federal court. The value of national uniformity of approach need not be subordinated, therefore, to differences in state choice of law rules.
Texas law controls in this case, because the real estate foreclosed on is in Texas. In BFP, the Supreme Court rested its decision in' part on the proposition that “the power to ensure [ ] security [of the titles to real estate] ‘inheres in the very nature of [state] government.’ ” Id. at -, 114 S.Ct. at 1764-65 (quoting American Land Co. v. Zeiss, 219 U.S. 47, 60, 31 S.Ct. 200, 204-05, 55 L.Ed. 82 (1911)). The security of land title in Texas should not be compromised by applying the law of a different state to Texas foreclosure sales. “The method for the foreclosure of a mortgage on land and the interests in the land resulting from the foreclosure are determined by the local law of the situs.” Restatement (Second) of Conflict of Laws § 229 (1971). The deed of trust said that any foreclosure sale should follow *949 Texas law. No serious argument can be made for applying the law of any state but Texas to the Texas real estate foreclosure.
C. Compliance With Texas Law.
The bankruptcy court found that the foreclosure sale complied with Texas law. It found that the sale was noncollusive, and notice was proper. Under Texas law, if that is so, the foreclosure stands.
In Texas “[m]ere inadequacy of consideration alone does not render a foreclosure sale void if the sale was legally and fairly made.” Tarrant Sav. Ass’n. v. Lucky Homes, Inc., 390 S.W.2d 473, 475 (Tex.1965). The Fifth Circuit has held that under Texas law, for inadequacy of consideration to invalidate the foreclosure sale, “there must also be some irregularity in the foreclosure which caused or contributed to cause the real property to be sold for a grossly inadequate price.” Savers Federal Sav. & Loan Ass’n v. Reetz, 888 F.2d 1497, 1503 (5th Cir.1989).
The only issue on appeal before us, regarding compliance with Texas law, is whether notice of the foreclosure sale should have been mailed to the debtors’ new address.[1] This issue is material to whether the foreclosure sale was conducted “legally and fairly” under Texas law. The bankruptcy court found that the notice was proper, but the district court reversed and remanded for additional findings. The facts are not at issue. The bankruptcy court and district court determinations of Texas law are reviewed de novo. In re Qintex Entertainment, Inc., 8 F.3d 1353, 1355 (9th Cir.1993).
The deed of trust requires that notice be posted on the courthouse door and mailed to the debtors, or as might otherwise be required by Texas law. The courthouse door notice is not at issue, nor did the debtors dispute Beneficial’s claim that it had mailed notice of the foreclosure sale. The only issue relates to the address to which Beneficial mailed the notice. The deed of trust says that Beneficial should mail the notice of foreclosure to “the most recent address for such parties in the records of the Beneficiary.” The deed of trust provides that the debtors all share the address of 3456 Camino Del Rio North, Suite 101, San Diego, California 92108. Beneficial mailed notice to that address.
The debtors were no longer at this address, and did not receive the notice. Their new address was 9225 Mira Mesa Boulevard, Suite 208, P.O. Box 261249, San Diego, California 92126. Mr. Lindsay’s address was used for all the debtors, and he had moved. The debtors provided evidence that Beneficial’s lawyers, one of whom was the trustee on the deed of trust, had, about six months before the foreclosure, sent mail in a different case to others of the limited partnerships in which Mr. Lindsay was general partner at the new address. The limited partnerships to which mail was sent at the new address were IMA 79-8, 78-1, 77-4, and 76-2. The limited partnerships involved in the case at bar are IMA 79-6 and IMA 81-3. The district court held that its lawyer’s knowledge of the debtors’ new address would be imputed to Beneficial, and remanded so that the bankruptcy court could determine whether the lawyer’s knowledge of the new address of others of the limited partnerships “constituted knowledge” of the new address of the limited partnerships which were involved in the case at bar.
We conclude that the notice was adequate as a matter of Texas law. The deed of trust specified that notice should be sent to the “most recent address for such parties in the records of Beneficiary,” not in the records of the trustee. There was no evidence that Beneficial, the beneficiary, had the debtor’s new address in its records. The deed of trust provided that the debtors could change the address to which notices thereunder would have to be sent by Beneficial, by mailing Beneficial a written notice of change of address. Although they could have assured themselves of notice of foreclosure by sending Beneficial a notice of change of address, and knew that foreclosure was the likely consequence of Greenway’s bankruptcy and their own, the debtors never, so far as the record reveals, sent Beneficial notice of change of address.
*950 After the ease was tried and the decision was made in bankruptcy court, the debtors moved to reopen the ease so that they could do additional discovery of Beneficial’s records to determine whether it had some indication of their new address. The judge denied the motion because the debtor’s request for production had been vague and whatever they had not obtained was their own fault, especially because of the general access Beneficial had given debtors’ lawyer to its files. The district court affirmed this denial of the motion to reopen, and so do we. The standard of review is “clear abuse of discretion,” and the ruling was eminently reasonable. United States v. Bransen, 142 F.2d 232, 235 (9th Cir.1944); Coastal Transfer Co. v. Toyota Motor Sales, 833 F.2d 208, 211-12 (9th Cir.1987).
The Texas statute, like the deed of trust, makes the address for notice the “address as shown by the records of the holder of the debt.” Tex.Prop.Code Ann. § 51.002(e) (West 1993) (formerly Article 3810). That means, in the context of a deed of trust, the beneficiary’s records, not the trustee’s. Texas law, according to its intermediate court of appeals, does not allow notice in the trustee’s records, or in the records of the beneficiary’s lawyer, to substitute for notice in the records of the beneficiary. See Dillard v. Broyles, 633 S.W.2d 636, 641 (Tex.Ct.App.1982). The general rule that a party is charged with knowledge of his lawyer, Carter v. Converse, 550 S.W.2d 322, 329 (Tex.Civ.App.1977), does not apply to this case, because the Texas statute and the language of the deed of trust make the beneficiary responsible to mail notice only to the address in its file. The debtors provided no evidence from which an inference could be drawn that Beneficial had their new address in its records. Cf. Lido Int'l, Inc. v. Lambeth, 611 S.W.2d 622, 624 (Tex.1981).
Even if the Texas Supreme Court were to adopt the proposition that if the trustee or the beneficiary’s lawyer knew of the debtor’s new address, then notice of foreclosure would have to be sent to that address under Texas law, the debtors still could not prevail. The lawyer-trustee did not have their address shown as such in his file. Lindsay was the general partner for numerous similarly named limited partnerships. The debtors’ evidence showed only that some others of the Lindsay-related limited partnerships, not the ones involved in the case at bar, had their new addresses in the lawyers’ files. The limited partnerships foreclosed upon in this case did not have their new address in the lawyer-trustee’s files.
Thus neither the beneficiary, as required by the deed of trust and the Texas statute, nor the beneficiary’s lawyer and trustee, had the debtors’ new address in their records. At best, they had other debtors’ addresses in their files, and they might have inferred that the debtors at issue should be sent mail at that same address. It might have been prudent, for purposes of avoiding years of litigation on the notice issue, as well as courteous, to cross copy the debtors’ lawyer on the notice of foreclosure, and to mail the notice of foreclosure to the new address of other Lindsay limited partnerships as well as the address in Beneficial’s records, but Texas law did not require it. Beneficial had no duty, under the deed of trust and Texas law, to have its lawyer infer that if some of Lindsay’s limited partnerships had new addresses, probably the ones at issue did too, and mail notice to the new address. Beneficial and its lawyer-trustee were acting as an unpaid creditor with a deed of trust, not as private detectives, and did all they were obligated to do under Texas law. Accordingly, the bankruptcy court correctly determined that the foreclosure sale was conducted in accord with Texas law.
D. Late Appeal.
The bankruptcy court granted summary judgment in favor of Beneficial on five of plaintiffs claims: (1) violation of the automatic stay, (2) breach of contract, (3) breach of contract — promissory estoppel, (4) fraud and deceit, and (5) negligent misrepresentation. The district court reversed the bankruptcy court on the grounds that plaintiffs established genuine issues of material fact. Beneficial appeals.[2]
*951 Beneficial argues that the district court erroneously denied its motion to dismiss the debtors’ appeal as untimely. We agree. The bankruptcy court issued a decision and order June 17 granting summary judgment for Beneficial on the five issues described above, but denying it on the fraudulent conveyance issue. The order says “the Order shall be entered as judgment” as to claims 1, 4, 5, 6 and 7, and that “there is no just reason for delaying entry of judgment.” The debtors filed a timely Rule 59 motion for reconsideration based on newly discovered evidence, which was denied December 1. That December 1 denial started the appeal time running. See Bankr.Proc.R. 8002(b).
The December 1 decision said that the court “will consider the defendants’ request for sanctions after the trial has been completed, as requested by [Beneficial].” On April 18, the court sent a letter to counsel explaining why the motion for reconsideration was frivolous, and directing Beneficial to provide a declaration of its fees and costs for opposing the motion so that sanctions could be imposed. On June 30, the bankruptcy court issued an order awarding $2,315 in sanctions in favor of Beneficial on the ground that the motion for reconsideration had been frivolous. The debtors filed notice of appeal July 20, of the June 6 order granting summary judgment, the June 22 amended order, the April letter, and the July sanctions award.
Under Bankruptcy Rule 8002(a), a party must file a notice of appeal “within 10 days of the date of the entry of the judgment, order, or decree appealed from.” That ten day period ran from December 1. Bankr.Proc.R. 8002(b). A Rule 54(b) judgment does not give the prospective appellant an election to appeal at that time or later, when the entire case is over; such a judgment is “final as to the claims and parties within its scope, and could not be reviewed as part of an appeal from a subsequent judgment as to the remaining claims and parties.” Williams v. The Boeing Co., 681 F.2d 615, 616 (9th Cir.1982). The debtors filed their notice of appeal to the district court seven months after the deadline.
The district court ruled otherwise on the ground that the bankruptcy court erred in granting Rule 54(b) certification, because it made only a summary determination of “no just reason for delay,” without making any findings. The district court was correct about the inadequacy of the findings. The court making a Rule 54(b) determination “should not direct entry of judgment under Rule 54(b) unless it has made specific findings setting forth the reasons for its order.” Morrison-Knudsen v. Archer, 655 F.2d 962, 965 (9th Cir.1981); see also Cadillac Fairview/California, Inc. v. United States, 41 F.3d 562, 567 (9th Cir.1994) (Kleinfeld, J. dissenting). The dangers of profligate Rule 54(b) determinations have materialized in this case. We and the parties have been burdened with the time and expense of five appeals, and 334 pages of briefs, in significant part because of the routine 54(b) determinations issued for interlocutory rulings. Even though counsel agreed on the Rule 54(b) language in the lodged orders, the bankruptcy judge should have stricken it.
The district court erred, though, in its conclusion that an erroneous Rule 54(b) determination does not start the running of the time for appeal. We have held that “the lack of Morrisonr-Knudsen findings is not a jurisdictional defect.” Alcan Aluminum Corp. v. Carlsberg Financial Corp., 689 F.2d 815, 817 (9th Cir.1982); see also Sheehan v. Atlanta International Insurance Co., 812 F.2d 465, 468 n. 1 (9th Cir.1987). Had the debtors appealed within ten days, the district court might have had discretion to dismiss the appeal because of the bankruptcy court’s failure to make appropriate findings, see Cadillac Fairview/California, 41 F.3d at 567. But they appealed too late, so the district court lacked jurisdiction. A Rule 54(b) determination, right or wrong, starts the time for appeal running. This avoids uncertainty for counsel about when to appeal. Counsel should not have asked for Rule 54(b) determinations, or obtained them without findings, but they got them, and must bear the consequences. The time for appeal expired before they filed notice of appeal. Untimely notice of appeal is a jurisdictional defect, so the district court lacked jurisdiction to vacate the summary judgment on appeal. In re Slim *952 ick, 928 F.2d 304, 306 (9th Cir.1990); In re Souza, 795 F.2d 855, 857 (9th Cir.1986).
We therefore do not reach the merits of the summary judgment determinations which the district court vacated. Because the debtors appealed too late, the bankruptcy court’s partial summary judgment in favor of Beneficial must be reinstated.
E. The Successors.
After the debtors filed bankruptcy, Bushard and a large number of people who allegedly had loaned $540,000 to the limited partnerships, as well as Lindsay and the limited partnerships themselves, filed another lawsuit in state court. By the time the Bushard plaintiffs served their complaint on Beneficial, the bankruptcy court had decided the limited partnerships’ and Lindsay’s case and published its opinion. The Bushard plaintiffs claimed in their state court lawsuit, subsequently removed to bankruptcy court, that their loans were secured by the limited partnerships’ interests in the Greenway note and deed of trust. One plaintiff, LEI Properties, Inc. alleges that it “is the successor entity to the Bankruptcy Estates of LEI, L.E.I. Properties, Inc., Investment Management Associates, Commonwealth Property Management Corporation and John R. Lindsay.” Their complaint is drafted by the same lawyer as the limited partnerships’ complaint, and is substantially identical, except that it adds a claim that because the foreclosure sale was improperly conducted Beneficial became a trustee for the debtors’ other creditors and had breached its fiduciary duty to them, and it omits the claims of fraudulent conveyance and violation of the automatic stay. Beneficial removed the case to bankruptcy court March 18,1988. The bankruptcy court dismissed it for failure to state a claim upon which relief could be granted, because the matter was res judicata. The limited partnerships had already been defeated on these claims, and the investors’ claims derived from the limited partners. The district court affirmed.
The Bushard plaintiffs are variously creditors, suecessors-in-interest of the limited partnerships and the general partner, and the identical parties to the Lindsay complaint. Any claim based on status as a creditor must have been filed with the bankruptcy court as part of that litigation. See 11 U.S.C. §§ 501(a), 727(b). Res judicata bars the claims of the successors in interest. See Restatement (Second) of Judgments § 43 (1982). The Bushard appellants argue on appeal[3] that their claim is not identical, so cannot be barred. The claims are a subset of the limited partners’ claims, except for the resulting trust theory, which depends entirely on the proposition that the foreclosure sale was improper. These differences are no barrier to res judicata. See Restatement (Second) of Judgments § 24 (“the claim extinguished includes all rights ... with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.”); see also id. at § 25 (res judicata is bar even where second action presents new evidence or new theories). We affirm the dismissal.
III. CONCLUSION.
The district court’s judgments affirming the bankruptcy court’s dismissal of the Bushard plaintiffs’ complaint (Appeal No. 92-55266) and affirming the bankruptcy court’s denial of the Lindsay plaintiffs’ motion to reopen the case and discovery (Cross-appeal No. 92-55224) are affirmed. The district court’s judgments affirming the bankruptcy court’s fraudulent conveyance determination (Appeal No. 92-55268), reversing the bankruptcy court’s declaratory judgment on compliance of the sale with Texas law, (Cross-appeal No. 92-55227), and reversing the bankruptcy court’s partial summary judgment (Appeal No. 92-55270) are reversed. All the cases are remanded to the district court, for proceedings and entry of judgments in accord with this opinion.
AFFIRMED in part, REVERSED in part, and REMANDED.

. This issue controls appeal Nos. 92-55224 & 92-55227.

. Appeal No. 92-55270.

. Appeal No. 92-55266.